**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NUMBER: _____**

**REINALDO VELAZQUEZ,**

        **Plaintiff,**

vs.

**MIAMI-DADE COUNTY, a political subdivision of the State of Florida,**

        **Defendant.**
_____/

**VERIFIED COMPLAINT**
**AND**
**DEMAND FOR JURY TRIAL**

Plaintiff **REINALDO VELAZQUEZ ("VELAZQUEZ"),** through undersigned Counsel**,** files this Verified Complaint and sues the Defendant, **MIAMI-DADE COUNTY ("COUNTY"),** for violations of Title VII of the Civil Rights Act of 1964, Section 2000e *et seq, 42 United States Code. Section 1983 and the ADEA,* based upon discrimination based upon age, race, ethnicity, and retaliation, as well as violations of his First and Fourteenth Amendment Rights, and as grounds therefor states as follows:

**JURISDICTION**

1. This Court has jurisdiction over the subject matter of this lawsuit under 28 U.S.C. § 1337 and Title VII of the Civil Rights Act of 1964, Title 42, United States Code, Section 2000e-16 and the Age Discrimination in Employment Act of 1967; and Title 42, United States Code, Section 1983.

1

## CONDITIONS PRECEDENT

2. All conditions precedent have been met, waived, or otherwise excused. **VELAZQUEZ** filed a timely Complaint with the EEOC and received a Right to Sue Letter, followed by the timely initiation of this lawsuit;

3. Plaintiff filed Complaints with the EEOC in April 2020, was issued a Right to Sue Letter on June 16, 2021, and has filed this Lawsuit within 90 days of receiving this letter.

## VENUE

4. Venue is proper in the United States District Court for the Southern District of Florida in that the Plaintiff was employed by **COUNTY**.

## PARTIES

5. **VELAZQUEZ,** the Plaintiff, was an employee of **MIAM-DADE COUNTY** as a bus operator working for the Miami-Dade Transportation & Public Works Department until January 2020;

6. **VELAZQUEZ** subsequently filed appeals and sought review of his unlawful termination; He was subsequently denied due process and is to this date being prohibited from employment with the County;

7. **COUNTY** is a political subdivision of the State of Florida;

8. At all times material, **COUNTY** was the employer of the Plaintiff within the meaning of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967;

## INTRODUCTION

9. **VELAZQUEZ** was discriminated and retaliated against based on age, race, and ethnicity in violation of Title VII of the 1964 Civil Rights Act, as amended, and based on age in violation of the Age Discrimination in Employment Act of 1967, as amended. He was also denied due process and had adverse action taken against him because he exercised his First Amendment Rights;

## THE FACTS OF THE CASE

10. **VELAZQUEZ** was employed as a bus operator with **COUNTY's** Department of Transportation & Public Works;

11. **VELAZQUEZ** is an Hispanic male;

12. **VELAZQUEZ** is over the age of 60 years;

13.. **VELAZQUEZ** had an excellent work record and there was never a legitimate, non-discriminatory reason to terminate his employment;

14. **VELAZQUEZ** was supervised by African-American Supervisors who spoke to him in a derogatory manner and treated him less favorably than they treated African-American employees;

15. **VELAZQUEZ's** treatment was based on a deliberate motive to discriminate against him based on his race and ethnicity;

16. **VELAZQUEZ** was qualified to work as a bus driver;

17. **VELAZQUEZ** was also terminated based upon his age and **COUNTY's** desire to employ younger drivers;

18. Although **VELAZQUEZ** was terminated, **COUNTY's** Transportation & Public Works Department hired drivers under the age of 40 who were not as qualified as **VELAZQUEZ**;

3

19. All of the reasons resulting in the discrimination of **VELAZQUEZ** constituted a pretext as there were no non-discriminatory reasons upon which to base the severe remedy of termination;

20. The termination of **VELAZQUEZ** and the decision to sustain his termination occurred in retaliation for his filing of an EEOC Complaint and multiple grievances, all of which were related to his complaints about discrimination that was illegal under Title VII and the ADEA;

21. The following is a chronology of the actions taken by **COUNTY** against **VELAZQUEZ** in the months preceding his termination which constitute the grounds upon which the filing of this lawsuit is based:

    (a) **VELAZQUEZ** was allegedly terminated for having a verbal disagreement with an African-American Supervisor. This action was taken without any of the required steps set forth in **COUNTY**'s Rules of Progressive Discipline, and there was no "just cause;" The County followed no established procedures and provided no meaningful due process;

    (b) African-American employees under similar or identical circumstances either received no discipline, progressive discipline, and /or were not terminated;

    (c) **VELAZQUEZ's** African-American Supervisors discriminated against him because of his race and ethnicity and provided more favorable treatment for bus operators and other Transportation Department employees who were not Hispanic white males;

    (d) On one occasion, **VELAZQUEZ** went into the office of Superintendent Wells, who is a black female, and who became hostile and disparaged

4

**VELAZQUEZ** in a manner in which she did not treat African-American employees;

(e) Dispatcher Supervisor St. Preux, of African-American decent, suspended **VELAZQUEZ** for no reason. **VELAZQUEZ** had arrived to perform his second piece of work and the Dispatcher Supervisor told him that the work had already been assigned to another operator. Dispatcher St. Preux took it upon himself to call the driver back and assign the work to **VELAZQUEZ,** who took the work. As **VELAZQUEZ** was performing his pre-trip, he noticed that the work was 15 minutes behind schedule. He did the route, even though he knew it was behind schedule; however, since it was a priority route, he wanted to write a report. When he arrived at the end of the route, he asked Dispatcher St. Preux for his name to include in his report because at that time V**ELAZQUEZ** did not know who Dispatcher. St. Preux was. Dispatcher St. Pruex questioned whether **VELAZQUEZ** had his vest on, which was irrelevant because **VELAZQUEZ** was in the Dispatch office and the vest was only required to be worn in the parking lot. There were many operators in the garage with jackets on because the office was cold; however, Dispatcher St. Pruex asked only **VELAZQUEZ** for his vest, and then proceeded to suspend him, and instructed Supervisor Wilson to remove **VELAZQUEZ** from duty for the next day. Dispatcher St. Pruex then advised **VELAZQUEZ** to go see his Superintendent the next day. Before leaving, **VELAZQUEZ** opened his jacket to show him that he was wearing his vest under his jacket. Dispatcher St. Preux did not have the authority to suspend him, and when **VELAZQUEZ**

5

     arrived the next day to speak with his Superintendent, he was told that he was not suspended, that he would get paid for the day, and to report for duty as scheduled the following day.

22. **VELAZQUEZ** was verbally reprimanded because despite feeling ill, he still reported for work; however, his Supervisor attempted to write him up. When **VELAZQUEZ** pulled into an emergency bay at the end of his route because he felt so ill, an ambulance had to be called to the site. His vitals were taken and his blood pressure was high. He was advised to go see his doctor. A Supervisor drove him to the garage, but then he had to wait for an hour and a half to be driven to the doctor. After waiting for so long, he went home and went to the doctor on his own. After discussing the incident with his Supervisor upon his return to work, the write-up did not occur because there was video evidence reviewed by Shop Steward Kevin Craig and **VELAZQUEZ** showing that Supervisor Juan Diaz violated major rules while operating the bus, which included talking on the phone while operating the bus and backing up without assistance. Two days later, **VELAZQUEZ** spoke with Kevin Craig to follow up and was told that General Superintendent of Bus Operations Joel Perez reviewed the tape and said that **VELAZQUEZ** was being retaliated against by Supervisor Juan Diaz. **VELAZQUEZ** was not reprimanded for these violations;

23. **VELAZQUEZ** believes that these actions were discriminatory because of his Hispanic heritage. In all of the actions listed above, Supervisors had been trying to reprimand him without just cause;

24. The incident with St. Preux was because of race, and the incident with Juan Diaz, Orlando Aleman, and Joel Perez were because of age; yet, no action was ever taken

6

against **VELAZQUEZ's** accusers.  The behavior of **VELAZQUEZ** has never amounted to the level of needing disciplinary action, nor was he ever served with any of the lesser incidents as required by the **COUNTY's** Rules of Progressive Discipline;

25. **VELAZQUEZ** is in the possession of the disciplinary action reports of other African-American employees that performed acts severely more egregious than those for which **VELAZQUEZ** was accused**,** and the worst discipline received by any of those African-American employees was a 30-day suspension, along with a "Last Chance Agreement," and they were back on the job.  None were ever terminated;

26. **VELAZQUEZ** is alleging in this lawsuit that discrimination has unfortunately become a common occurrence in the Miami-Dade County Department of Transportation & Public Works;

27. **VELAZQUEZ** vehemently denies that accusation and has provided proof that he was terminated because he was discriminated against because of his age and because of his Hispanic heritage.  **VELAZQUEZ** had been a Miami-Dade County employee for 15 years with zero prior disciplinary actions, except for the incident for which he was terminated;

28. When stationed in the Coral Way Garage, which is a more diverse garage because of the demographics of the community, there were never any issues.  Upon arriving at the Central Bus Garage, which is predominately an African-American majority demographic, **VELAZQUEZ** began getting increased calls to see his Supervisor. The overwhelming majority of the personnel, including operators, dispatchers, and supervisors, who all falsely accused him of violent acts, are all African-American employees;

29. Many operators speak loudly at the garage, and it is not seen as abnormal behavior. There have been occasions where operators have had to be escorted off the property due to their behavior; however, that was not the case with **VELAZQUEZ** because he had never threatened anyone, not in English and not in Spanish. **VELAZQUEZ** only defended his character because his Supervisor was trying to intimidate him. **VELAZQUEZ** truly believes that if he were of African-American descent, he would not have been terminated for his actions as it would not have been seen by his Supervisors as abnormal behavior;

30. On April 5, 2019, **VELAZQUEZ** was performing his first piece of work when he was delayed in traffic. He would normally need to be relieved at the end of the line, then catch the bus going back to the garage to begin his second piece of work. If he is even ten minutes late, he would miss the bus going back to the garage, so this was not a one-time occurrence. On one particular day, the bus he rode going back to the garage had an accident enroute, furthering the delay through no fault of his own. When arriving at the garage, he was told to go see the Superintendent to sign his green sheet (late payment form). This is part of the normal process when the second piece of work has already been assigned to a driver on the board. **VELAZQUEZ's** regular Supervisor, Mr. Orlando Aleman, was not present at the time and only Ms. Sandra Wells was at the office. As **VELAZQUEZ** approached, there was an African-American bus operator standing at the doorway to her office. He had a similar situation as **VELAZQUEZ** had experienced, and Ms. Wells signed that driver's sheet without incident. As **VELAZQUEZ** approached, Ms. Wells' demeanor changed immediately. Similar to the driver before him, he asked her to please sign his green sheet. Her response was abrasive, and she stated, "You know, if

8

it was up to me, I would take away the second piece of work and send you back to the board." **VELAZQUEZ** asked her if she were treating him so poorly because he had brought up concerns about this incident. He asked her to check his video to see if he did anything wrong, but there was no reasoning with Ms. Wells. As the conversation escalated, **VELAZQUEZ** stated that this discriminatory treatment was unfair and that he was going to go talk with the Chief. At that time, Ms. Wells stated, "Are you trying to intimidate me?" **VELAZQUEZ** replied, "No. Are you trying to intimidate me?" While walking out of Ms. Wells' office to go to Chief Achinah's office, she followed him and Supervisor Gilbert had to physically restrain Ms. Wells from attacking him. Chief Achinah, also African-American, heard the commotion and asked **VELAZQUEZ** to come to her office. She de-escalated the situation and **VELAZQUEZ** was asked to go home. An hour later, **VELAZQUEZ** was called and relieved of duty pending an investigation;

31. **VELAZQUEZ** was very vocal and public in his criticism of the Miami-Dade County Transportation Department and was informed that there would be consequences for his vocal and public criticism of the Department; Velazquez was targeted due to his vocal criticism of the County Department of Transportation as such vocal critics were treated as trouble makers.

32. The Miami-Dade County Transportation Department never provided **VELAZQUEZ** or other employees with any form of meaningful due process;

33. The system was rigged against **VELAZQUEZ** being able to confront his accusers;

## COUNT I.
## **VIOLATION OF TITLE VII - UNLAWFUL TERMINATION**
### **(Ethnicity and Gender)**

34.. Plaintiff re-alleges paragraphs 1 through 33 as if fully set forth herein.

35. **VELAZQUEZ** was terminated because he was an Hispanic male;

36. **VELAZQUEZ** was terminated without cause despite possessing an unblemished record throughout his employment at the **COUNTY's** Department of Transportation;

37. Non-Hispanic male employees received more favorable treatment.

*WHEREFORE,* Plaintiff demands judgment for damages against the **COUNTY,** including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

### COUNT II.
### DISCRIMINATION BASED ON AGE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

38. Plaintiff re-alleges paragraphs 1 through 33 as if fully set forth herein;

39. **VELAZQUEZ** is a 60-year-old male, and the **COUNTY** willfully discriminated against him due to his age by intentionally firing him because of his age and then retaining and/or hiring younger and less qualified individuals;

40. As a direct and proximate result of said discrimination by **COUNTY**, Plaintiff has suffered damages.

*WHEREFORE,* Plaintiff demands judgment for damages against the **COUNTY,** including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

## COUNT III.
## RETALIATION IN VIOLATION OF TITLE VII

41. Plaintiff re-alleges paragraphs 1 through 32 above as if fully set forth herein;

42. Plaintiff engaged in protected activities in the form of filing a Complaint;

43. As a direct and proximate result of **VELAZQUEZ** engaging in his protected activities and in direct retaliation for engaging in his protected activities, **VELAZQUEZ** was subjected to adverse employment actions in a tangible way, in the denial of employment opportunities, and in the deprivation of benefits by termination;

44. As a direct and proximate result, Plaintiff has suffered permanent damages.

*WHEREFORE,* Plaintiff demands judgment for damages against the **COUNTY,** including but not limited to compensatory damages, back pay and benefits, future pay and benefits, liquidated damages, punitive damages, prejudgment interest, and attorney's fees and costs, and other available relief as the Court deems just and proper.

## COUNT IV.
## VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS
## (Section 1983)

45. The Plaintiff re-alleges paragraphs 1 through 32 as if fully set forth herein;

46. **COUNTY**, under color of law, punished **VELAZQUEZ** for exercising his First Amendment Rights;

47. **COUNTY** violated the Plaintiff's First Amendment Rights as a policy and practice of targeting whistleblowers and critics, and **COUNTY** adopted and enforced the decisions of the policymakers who administered the punishment;

48. **COUNTY** retaliated against and harmed **VELAZQUEZ** because of the exercise of his First Amendment Rights;

49. As a direct and proximate result of the violations of Plaintiff's First and Fourteenth Amendment rights, Plaintiff has suffered mental and emotional pain and suffering, mental anguish, embarrassment, humiliation, and other damages.

**WHEREFORE,** Plaintiff demands judgment for compensatory and special damages, punitive damages, an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988, and all other relief the Court may deem just and proper.

## COUNT V.
## DEPRIVATION OF PROPERTY AND RIGHTS WITHOUT DUE PROCESS
## (Section 1983)

50. Plaintiff re-alleges paragraphs 1 through 33 as if fully set forth herein;

51. **COUNTY** enforced a practice and custom of terminating employees without a scintilla of due process;

52. **VELAZQUEZ** had a property interest in his employment;

53. **COUNTY** knowingly adopted and enforced the deprivation of **VELAZQUEZ's** deprivation of his property without due process;

54. As a direct and proximate result of the aforementioned acts and omissions, **VELAZQUEZ's** Constitutional rights have been violated. By their acts and omissions, **COUNTY** officials acted under the color of state law to deprive **VELAZQUEZ** of his Constitutional rights without due process in violation of 42 U.S.C. § 1983;

55. As a direct and proximate cause of the violations of **VELAZQUEZ's** rights, he has suffered severe mental and emotional pain and suffering, mental anguish, embarrassment, humiliation, and other damages.

**WHEREFORE**, Plaintiff demands judgment for compensatory and special damages, punitive damages, an award of reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and costs pursuant to 42 U.S.C. §§ 1920 and 1988, and all other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury of all issues triable as of right by jury.

## **VERIFICATION**

I declare under penalty of perjury under the laws of the United States of America that I have read the Complaint and the foregoing facts are true and correct.

_____
**REINALDO VELAZQUEZ**

Dated this _____ day of September 2021 by Reinaldo Velazquez, Plaintiff.

Respectfully submitted,

**Michael A. Pizzi, Jr., Esq.**
Florida Bar No. 079545
6625 Miami Lakes Drive - Suite 316
Miami Lakes, FL  33014
Telephone:   (305) 986-2277
Fax:              (305) 777-3802
E-Mail:         mpizzi@pizzilaw.com


By: ____*s/s Michael A. Pizzi, Jr.*____
**Michael A. Pizzi, Jr., Esq.**